If this case had been the ordinary one of a husband, who being bound by no -agreement to provide for his wife, was left by the laws to make such provision as he deemed sufficient for her, proportioned to his own views of his estate, and to his affections, there could he no doubt that the argument would be conclusive j and the Court certainly would not be at liberty to examine or to decide upon the competency of the provision. His will "would make the law, leaving to his widow no other alternatives than to accept the provision, or to renounce it, and resort to her claim of dower in his real estate. But this is a very different case. The husband has bound himself by an agreement, that for a consideration, which was in reality a valuable one, and which he considered in that light,'« he would bequeath to her by his will a competent and sufficient maintenance during her life.” By this agreement he has renounced that absolute power, of disposing of his estate at his pleasure, or even at his caprice, with which the law had clothed him: and I cannot doubt that he could bind himself to do so. *195 No cases were cited on this point. But there are cases which shew that men may bind themselves to make their wills in a particular way. I allude to the cases whore two men have agreed to make mutual wills, whereby they were to derive certain advantages on the happening of certain stipulated events. In these cases the Court of Equity has held the parties to be hound, and has made the estate of the party, who did not comply with the agreement, liable to the other party who had complied on the happening of the events which entitled him' to the benefit. So, too, there- are cases where a father has promised, in consideration of the marriage of a child, to leave such child, a legacy.. This has been, held to be binding on his estate, after his death, when he had neglected'to provide. (See 3 Vesey, 402, 412, 416, Lord Walpole vs. Lord Orford. In this case is cited, 1 Vernon, 48, Goilmore vs. Battison; and the case of Durour vs. Perraro and al. decided by. Lord Camden. See 2 Hargrave’s Juridical Arguments, 304.) But independently of any preceding decisions, I should feel no hesitation to decide this point on principle.
A man may renounce every power, benefit, or right, which the laws give him, and he will be bound by his agreement to do so, provided the agreement be entered into fairly, without surprise, imposition, or fraud’, and that it he reasonable and moral. In the case under consideration Mr. Rivers did enter into a deliberate agreement, fairly, and upon a valuable consideration, to leave his wife a competent maintenance during her life; There is nothing immoral, or unjust, or unreasonable, in this. She is barred- by her agreement from all other claims on his estate. And shall she be- bound, and he be free ? Surely this would be unjust in the highest degree. It appears to me that to make a will in a particular way, on proper considerations, is as much a subject of contract as any other j and he who makes a contract on this subject, is as much bound thereby as he would be by any agreement on any other subject. To he sure the Court would be more strict in examining in.- *196 ^10 na^lire and circumstances of such agreements than any others, and would require very satisfactory proofs of the fairness and justness of the transaction. I con-0fc^u^e’ therefore, that the party had a right to bind himself to make his will in a particular way by an agreement, and the Court has the power to enforce the agreement.
The next question then is, Has Mr. Rivers complied with his agreement, and has he left by his will a sufficient maintenance for his wife during her life ? This is certainly a very delicate question, into which the Court enters reluctantly, and must decide cautiously. But it is called upon to decide, and the party has a right to its decision.
The want of certainty, in the extent of the provision to bo made, was urged with force ; and it certainly has weight, but it is not conclusive. It was to he adequate, and that adequacy can be ascertained. Suppose Mr. Rivers had made so very small a provision for his wife, that at the first blush it would have appeared to every person to be inadequate, could there have been any doubt at all that she would have been entitled to redress ? A provision, for instance, of 10Í. per annum, would have been so palpable a violation of the spirit of the agreement, that no court could have tolerated the act. Relief must have followed of course. This shews that the Court is bound to look to the estate, and to the provision made out of it for the benefit of the wife, and pronounce whether it be sufficient. I have done so, and I feel myself bound to say that the provision made is not sufficient in the true spirit of the agreement. Taking the income at 1800 dollars, the provision of about 240 dollars, per annnm, is less than a seventh part of the income. This I must consider inadequate. It is true that the expenditures of Mr.' Rivers, in his family, did not exceed 1200 dollars per annum; and 240 dollars per annum is exactly a fifth part of that income. But it should be remembered that he derived many essential and economical supplied from his plantation, and that he *197 lived in Ms own bouse, free from rent, and that she partook fully of all these advantages. I feel, therefore, that it is an inadequate provision, looking to her character as a wife, to his fortune and to his agreement. What ° then would be a sufficient maintenance, according to the stipulation in the agreement? I am reluctant to exercise an arbitrary discretion on this question. It would perhaps be safer to follow the rule furnished by the law, than to create one from my own fancy or judgment. That would have given her a third of the estate in case of intestacy. Mr. Rivers’s object, in the agreement, seems to have been to avoid the troubles and the disputes which might have resulted to his family in ease of an intestacy ; and to give a sufficient provision to Ms wife instead of a share in the estate itself, which might have involved litigation and inconvenience to his children. That object would perhaps be properly attained, by allowing his widow that proportion of the income of his estate during her life, which she would have been entitled to absolutely if ho had died without a will.
Perhaps, however, in a family case like this, no claims should he pushed, or allowed to go to extremes. Moderation in demanding, and liberality in conceding, would best become all parties; and in a cause requiring a delicate discretion, not an arbitrary one, which I disclaim, it may be considered most proper to put the wife on a footing of one of the children, and to allow her a fourth part of the actual income. If she obtains as much for her annual supp ort as one of the testator’s children, I think this might come up to the idea of a competent and sufficient maintenance, intended by the agreement, having due reference to the testator’s property and family. I confess that iny mind has fluctuated between the third and the fourth part of the income; but, upon the whole, I think justice would he done, and the intention of the parties answered, by allowing her a fourth part. It was contended, by the complainant’s counsel, that the estate was worth 40,000 dollars, and that the actual income was too small for such a capital, being *198 far below the legal interest j and that the Court might, vest the estate in such a manner as would make it more productive* and then give the widow a third part of that 0fincreasct* income. In my judgment that would be going much too far. I cannot take upon me to alter the estate, to speculate, and to risk the chances of a change which might be disadvantageous. I think I am bound to take the estate as I find it, and to make the allowance out of the income as it exists, and not upon a supposition of what it might be made to be. It might be more correct to refer it to the master, to report annually the precise amount of the nett income, after deducting all general plantation expenses, taxes, &c. But as I am desirous to prevent further vexations, and disquieting enquiries and discussions, in this family cause, and particularly the disagreeable and irritating circumstance of a future annual account, I will have no objection to take, upon me to decide from the information before me, which seems to be tolerably correct. Taking therefore the amount of the income to be g 1300, and deducting 200 for general expenses, I will allow a fourth part of that amount to the widow.
It is therefore ordered and decreed, that the executors du allow and pay to the complainant the sum of 400 dollars per annum, from the testator’s death, during her life; deducting therefrom the amount of the sums she has received, and the value of the articles of the estate she has selected and taken ,• which allowance shall be in lieu of the inadequate provision made by the testator’s wll and in performance of the agreement. In this case the executors were not only justified, but compelled to come into this Court to obtain a sanction for any allowance exceeding the provision made by the will. Their Conduct has been perfectly correct. The costs, therefore, must be divided among the parties according to their respective proportions. The complainant must pay one fourth of them out of her estate, and the defendants the remaining three fourths out of the proportion .ef *199 'the income of the estate to which the children are enti-tied.
As the demand upon the estate may come somewhat unexpectedly upon the heirs, it is proper that a reasonable time should be allowed for the payment of the arrears. Let one half the arrears, therefore, be paid on or before the 1st of Api*il, and the balance on or before the 1st of January, 1812.
[See note to the case of Ralph Izard vs. Middleton, executor of John Izard.]